Tory E. Griffin (State Bar No. 186181)
Avalon Johnson Fitzgerald (State Bar No. 288167)
REYNOLDS TILBURY WOODWARD LLP
11601 Blocker Drive, Ste. 105
Auburn, CA  95603
Phone:   (530) 885-8500
Fax:       (530) 885-8113
Email:    tgriffin@rtwlawllp.com
Email:    afitzgerald@rtwlawllp.com

James F. Bennett (MO Bar No. 46826) (*pro hac vice forthcoming*)
Kelly J. H. Murrie (MO Bar No. 58569 (*pro hac vice forthcoming*)
Rebecca McLaughlin (MO Bar No. 71969) (*pro hac vice forthcoming*)
DOWD BENNETT LLP
7676 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Phone:   (314) 889-7300
Email:    jbennett@dowdbennett.com
Email:    kmurrie@dowdbennett.com
Email:    rmclaughlin@dowdbennett.com

Attorneys for Defendants Fortress North America, LLC, and
Compass Minerals International, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BURNHAM; SIERRA NEVADA CONSULTING INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FORTRESS NORTH AMERICA, LLC, a California limited liability company, COMPASS MINERALS INTERNATIONAL, INC., a Delaware corporation, and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No.<br><br>(Placer County Superior Court Case No. S-CV-0053505)<br><br>Related Case No.: 2:24-at-01492<br><br>**NOTICE OF REMOVAL**<br><br>**DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS ROBERT BURNHAM AND SIERRA NEVADA CONSULTING, INC., AND THEIR ATTORNEYS OF RECORD:

**JURISDICTION**

PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, Defendants Fortress North America, LLC ("Fortress") and Compass Minerals International, Inc. ("Compass Minerals") (collectively, "Defendants") hereby remove the above-entitled action from the Superior Court of the State of California, County of Placer, to the United States District Court for the Eastern District of California. This Court has original subject matter jurisdiction over this lawsuit based on diversity jurisdiction.

In support of this removal, Defendants state the following:

**PLEADINGS, PROCESS, AND ORDERS**

1.  On August 29, 2024, Plaintiffs Robert Burnham ("Burnham") and Sierra Nevada Consulting, Inc. ("SNC") (collectively, "Plaintiffs") filed an unverified complaint for damages in the Superior Court of the State of California, for the County of Placer, entitled *Robert Burnham and Sierra Nevada Consulting, Inc. v. Fortress North America, LLC, and Compass Minerals International, Inc.*, Case No. S-CV-0053505 (the "State Court Action"), asserting claims against Fortress, Compass Minerals, and Does 1-10. In the Complaint, Plaintiff Burnham alleges that he was terminated by Fortress and/or Compass Minerals without cause and on the basis of an alleged disability. Plaintiff Burnham alleges seven causes of action against Defendants, including 1) breach of an employment agreement, 2) declaratory relief, 3) breach of the implied covenant of good faith and fair dealing, 4) intentional infliction of emotional distress, 5) disability discrimination in violation of California Government Code Section 12940(m), 6) retaliation in violation of California Government Code Section 12940(h), and 7) failure to reimburse necessary expenditures in violation of California Labor Code

Section 2802. Plaintiffs Burnham and SNC allege three additional causes of action against Defendants, including 1) breach of an oral or implied in fact contract regarding four trucks, 2) conversion of property at a Fortress facility in Rocklin, California, and 3) unfair business practices. Plaintiffs are also pursuing all ten causes of action against "Does 1 through 10," claiming generally "that each of the fictitiously named defendants was responsible in some manner for the events and acts alleged" and "thereby proximately caused injuries and damages to Plaintiffs." Ex. B, Compl., ¶ 5. Plaintiffs seek compensatory damages, interest, costs of litigation and attorney's fees, restitution, and punitive damages, as well as declaratory relief.

2.     A summons, Plaintiffs' Complaint, a civil cover sheet, a Notice of Case Management Conference, and an Alternative Dispute Resolution Information Sheet were served on Defendants on October 28, 2024. A true and correct copy of the Summons is attached hereto as **Exhibit A.** A true and correct copy of Plaintiffs' Complaint, including the exhibits to the same, is attached hereto as **Exhibit B**. A true and correct copy of the Civil Cover Sheet is attached hereto as **Exhibit C**.  A true and correct copy of the Notice of Case Management Conference is attached hereto as **Exhibit D**. Lastly, a true and correct copy of the Alternative Dispute Resolution Information Sheet is attached hereto as **Exhibit E**. Exhibits A, B, C, D, and E constitute all the pleadings, process, and orders served upon or by Defendants in the State Court Action.

## <u>REMOVAL IS TIMELY</u>

3.     Removal is timely. Plaintiffs' Complaint in the State Court Action was served on Defendants on October 28, 2024. This Notice of Removal is timely filed because it is filed within 30 days of Defendants being served a copy of a paper (in this case, the Complaint) that revealed this case was properly removable. 28 U.S.C. § 1446(b)(1); *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011) (holding that "defendant is entitled to thirty days to exercise his removal rights after being served."). Specifically, the deadline for removal (i.e., the thirtieth day following the date of service) is November 27, 2024.

4.      No previous Notice of Removal has been filed with this Court for the relief sought herein.

### DIVERSITY JURISDICTION EXISTS

5.      This action is a civil action over which this Court has original diversity jurisdiction under 28 U.S.C. § 1332. Removal to this Court is proper under the provisions of 28 U.S.C. §§ 1441(a) and (b) because the action involves citizens of different states and the amount in controversy exceeds $75,000.

**A.      Complete Diversity of Citizenship Exists Between the Parties.**

6.      A case may be heard in federal court under diversity jurisdiction if there is complete diversity, i.e., all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332(a); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants."). A defendant may remove an action to federal court under 28 U.S.C. § 1332 provided no defendant is a citizen of the same state in which the action was brought. *Id.* § 1441(a)–(b). The citizenship of defendants sued under fictitious names must be disregarded for removal purposes. *Id.* § 1441(b)(1). Here, all requirements are met because Plaintiffs are citizens of Montana, Nevada, and California, and Defendants are citizens of Delaware and Kansas.

### *1.      Plaintiffs are citizens of Montana, Nevada, and California.*

7.      Plaintiff Burnham is an individual. An individual is a citizen of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

8.      At the time Plaintiff Burnham filed this civil action, he was a citizen of the State of Montana. Ex. B, Compl., ¶ 1.

9.      Plaintiff SNC is a corporation. Under 28 U.S.C. §§ 1332(c)(1), a corporation is a citizen of the state in which it is incorporated and the state where it has its principal place of business. As alleged in the Complaint, Plaintiff SNC is incorporated in Nevada and maintains its principal place of business in California. Ex. B, Compl., ¶ 2. Based on the allegations in the Complaint, therefore, SNC is a citizen of Nevada and California for purposes of federal jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

### 2.      *Defendants are citizens of Delaware and Kansas.*

10.     Defendant Compass Minerals is a corporation. Compass Minerals is now and was at the time of the filing of the Complaint, incorporated in the State of Delaware, with its principal place of business in Kansas. *See* Declaration of Gary Gose in Support of Notice of Removal ("Gose Decl."), ¶ 4; *see also* Ex. B, Compl., ¶ 4. Compass Minerals is therefore a citizen of Delaware and Kansas for purposes of federal jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

11.     Defendant Fortress is now and was at the time of the filing of the Complaint, a Delaware limited liability company. *See* Gose Decl., ¶ 5; *see also* Ex. B, Compl., ¶ 3. For diversity purposes, a limited liability company is deemed a citizen of the states of all its members. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also 3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (same).

12.     Compass Minerals America Inc. ("Compass America") is now and was at the time of the filing of the Complaint, the sole member of Fortress. *See* Gose Decl., ¶ 6. Compass America is now and was at the time of the filing of the Complaint, incorporated in the State of Delaware, with its principal place of business in Kansas. *See* Gose Decl., ¶ 7. Fortress is therefore a citizen of Delaware and Kansas for purposes of federal jurisdiction.[1] *See* 28 U.S.C. § 1332(c)(1).

---

[1] In the body of the Complaint, Plaintiffs correctly identify Fortress as a "Delaware limited liability company." Ex. B, Compl., ¶ 3. However, in the case caption, Plaintiffs identify Fortress as a "California limited liability company," presumably based on the allegations that Fortress is "registered to do business in California" and maintains its principal address in California. *See* Ex. B, Compl., ¶¶ 3, 9. For diversity jurisdiction purposes, however, courts within the Ninth Circuit consider only the citizenship of the members of a limited liability company. *See Johnson*, 437 F.3d at 899 (finding that the Supreme Court has consistently refused "to extend the corporate citizenship rule to non-corporate

13.     Plaintiffs have not provided any information regarding the citizenship of Does 1-10 in the Complaint. Even if they had, in determining whether a civil action is removable on the basis of diversity jurisdiction, "the citizenship of defendants sued under fictitious names shall be disregarded." *See* 28 U.S.C. § 1441(b)(1); *see also Vasquez v. Walmart, Inc.*, Case No. 1:23-cv-01142-JLT-BAM, 2024 WL 966076, at *4-5 (E.D. Cal. Mar. 6, 2024) (disregarding citizenship of fictitious defendant for diversity jurisdiction purposes).

14.     In compliance with 28 U.S.C. § 1441(b)(2), none of the "parties in interest properly joined and served as defendants is a citizen of the State in which [this] action is brought."

15.     Based on the foregoing, complete diversity exists because Plaintiffs are citizens of Montana, Nevada, and California, and Defendants are citizens of Delaware and Kansas.

**B.      Plaintiffs place more than $75,000 in controversy.**

16.     "District courts 'have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.'" *Adkins v. J.B. Hunt Transport, Inc.*, 293 F. Supp. 3d 1140, 1143 (E.D. Cal. 2018); *see also Zamudio v. Aerotek, Inc.*, No. 1:21-CV-01673-JLT-BAK-SKO, 2022 WL 458059, at *1 (E.D. Cal. Feb. 15, 2022) (same). "To determine if the amount in controversy requirement is met, the court looks to the amount demanded by the plaintiff in the Complaint." *Adkins*, 293 F. Supp. 3d at 1144. The amount-in-controversy requirement is satisfied if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the amount in controversy exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *see also Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 882 (S.D. Cal. 2021) ("In assessing the propriety of removal, the district court considers the allegations in both the complaint and notice of removal as well as any documents attached."); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014) ("[A]

---

entities, including those that share some of the characteristics of corporations" and holding that "an LLC is a citizen of every state of which its owners/members are citizens").

defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). That standard is met here.

17.     In the Seventh Cause of Action of the Complaint, Plaintiff Burnham seeks more than $75,000 in actual damages, and in the Eighth Cause of Action, Plaintiffs Burnham and SNC seek more than $75,000 in actual damages, including approximately $250,000 in reimbursements for the alleged purchase of four vehicles on behalf of Fortress. Ex. B, Compl., ¶¶ 92-94, 97-103.

18.     Furthermore, Plaintiff Burnham seeks "acceleration of his 'Re-Vest' payments," "payment of all 'Accrued Accounts,' which includes unpaid base salary, vacation, annual bonus and employee benefits," and "a lump sum payment equal to six (6) months of his base salary."  Ex. B, Compl., ¶ 46.

19.     According to the Complaint, Plaintiff Burnham values the alleged "Re-Vest" payments as being worth "nearly $10 million dollars to Burnham."  *See* Ex. B, Compl., ¶ 24.

20.     Additionally, Plaintiff Burnham allegedly received an annual base salary of $290,000. *See* Ex. B, Compl, Ex. A, at ¶ 4.1. Thus, by seeking "a lump sum payment equal to six (6) months of his base salary," Plaintiff Burnham is seeking an additional $145,000 in damages. *Compare* Ex. B, Compl., ¶ 46 *with* Ex. B, Compl., Ex. A, at  ¶ 4.1.

21.     Plaintiff Burnham also seeks an unspecified amount in punitive damages, Ex. B, Compl., ¶¶ 67, 78, 87, and Prayer for Relief, which may be included in the amount in controversy to establish federal jurisdiction when punitive damages are recoverable as a matter of law. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) ("Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract.").

22.     Here, Plaintiff Burnham brings causes of action for disability discrimination and retaliation pursuant to the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 *et seq.* Punitive damages are available under FEHA. *Id.* § 12940. While Defendants do not

concede that punitive damages are warranted, California juries have returned verdicts with substantial punitive damage awards in employment discrimination actions. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) ("[T]he jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases."). In *Molina v. Target Corp.*, which has been relied upon by this Court on the issue of punitive damages, *see Zamudio*, 2022 WL 458059, at *4, the court "applied a conservative 1:1 ratio of Plaintiff's compensatory damages with punitive damages." *Molina v. Target Corp.*, No. CV 18-03181-RSWL-FFM, 2018 WL 3935347, at *4 (C.D. Cal. Aug. 14, 2018). Thus, Plaintiff Burnham's claim for punitive damages places an amount in controversy above the jurisdictional threshold.

23.     Plaintiff Burnham also seeks to recover an unspecified amount in statutory attorneys' fees. *See* Ex. B, Compl., ¶¶ 79, 88, 94, and Prayer for Relief. Courts have held that an award of attorneys' fees, if such fees are authorized, may be considered for purposes of calculating the amount in controversy. *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (attorneys' fees are included in the calculation of the amount in controversy under 28 U.S.C. § 1332(a)).

24.     Here, Plaintiff Burnham brings claims under the FEHA, which allows a "prevailing party" to recover reasonable attorneys' fees. Cal. Gov. Code § 12965(c)(6) ("[T]he court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees"). Thus, the attorneys' fees incurred by Plaintiff Burnham in connection with prosecuting his claims under the FEHA would increase the amount in controversy even more, and, when combined with the other damages, exceed the jurisdictional threshold of this Court.

25.     Defendants do not concede that Plaintiffs are entitled to an award of any such amounts or any amount at all; Defendants merely allege that, by virtue of the allegations in their Complaint,

1

Plaintiffs have placed these amounts in controversy.

2

26.     Because the amount in controversy far exceeds $75,000, removal is proper.

3

**VENUE**

4

27.     The Superior Court of the State of California for the County of Placer is located within

5

the Eastern District of California. *See* 28 U.S.C. § 84(b). Venue is therefore proper in the Eastern

6

District of California under 28 U.S.C. § 1441(a) because this district embraces the county in which the

7

removed action has been pending.

8

9

**NOTICE OF REMOVAL**

10

28.     Defendants will promptly serve this Notice of Removal on Plaintiffs and file it with the

11

Clerk of the Superior Court of the State of California, County of Placer, as required by 28 U.S.C.

12

§ 1446(d).

13

14

**NO WAIVER  OR ADMISSION**

15

29.     By removing this action to federal court, and by this Notice of Removal, Defendants do

16

not waive any defenses available to them, nor do Defendants admit liability or any of the allegations

17

contained in Plaintiffs' Complaint.

18

30.     Nothing in this Notice of Removal should be construed as a concession that Plaintiffs

19

can recover a certain amount or nature of damages. As a matter of law, the removing party may argue

20

that, *assuming* the plaintiffs succeed on the merits, the amount in controversy would be over the

21

jurisdictional threshold, while continuing to deny liability at all. *See, e.g., Lewis v. Verizon Commc'ns,*

22

*Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total

23

amount in dispute, not a prospective assessment of defendant's liability."); *see also McPhail v. Deere*

24

*& Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the

25

plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of

26

the litigation.").

27

28

31.     Here, Defendants are simply identifying the amount in controversy (which exceeds the statutory threshold of $75,000), but in no way admit that they have an obligation to pay any such monies to Plaintiffs. Nor do Defendants admit in any way that they are liable for any of the claims alleged by Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request that this action be removed from the Superior Court of the State of California for the County of Placer to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and that all future proceedings in this matter take place in the United States District Court for the Eastern District of California.

If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief, evidence, and oral argument in support of their position that this case is removable.

Dated:  November 26, 2024                    REYNOLDS TILBURY WOODWARD LLP


By: /s/     Tory E. Griffin
Tory E. Griffin
Avalon Johnson Fitzgerald

James F. Bennett
Kelly J.H. Murrie
Rebecca McLaughlin
DOWD BENNETT LLP

Attorneys for Defendants
Fortress North America, LLC and Compass Minerals International, Inc.

10

**CERTIFICATE OF SERVICE**

CASE TITLE:   *Burnham, et al. v. Fortress North America, LLC, et al.*
COURT:        United States District Court, Eastern District

I am a citizen of the United States, and I am employed in St. Louis County, State of Missouri. My business address is Dowd Bennett LLP, 7676 Forsyth Blvd., Suite 1900, St. Louis, MO 63105, and my electronic service address is lwilliams@dowdbennett.com. I am over the age of 18 years and not a party to the above-entitled action.

On the date indicated below, I served the within copy (or copies) of:

- **NOTICE OF REMOVAL (WITH EXHIBITS A – E)**
- **CIVIL COVER SHEET**
- **DECLARATION OF GARY GOSE (WITH EXHIBITS 1-4)**

On the interested parties in said action addressed as follows:

Meghan M. Baker
Alexandra K. LaFountain
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
Ph: (916) 444-1000
F:  (916) 444-2100
mbaker@downeybrand.com
alafountain@downeybrand.com

Attorneys for Plaintiffs Robert Burnham
and Sierra Nevada Consulting Inc.

▸    ( X ) **BY MAIL** -- by placing a true copy thereof enclosed in an envelope addressed as set forth above. I am readily familiar with this office's practice whereby the mail is sealed, given the appropriate postage, and placed in a designated mail collection area. Each day's mail is collected and deposited in a United States mailbox after the close of each day's business.

▸    ( X ) **BY ELECTRONIC MAIL** – by email to the person(s) at the email address(es) listed above on the date indicated below.

I declare under penalty of perjury under the laws of the State of Missouri that the foregoing is true and correct, and that this declaration is executed on November 26, 2024, at St. Louis, Missouri.

_____
Linda Williams

11
NOTICE OF REMOVAL

# Exhibit A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANTS:**<br>*(AVISO AL DEMANDADO):*<br>FORTRESS NORTH AMERICA, LLC, a Delaware limited liability company,<br>COMPASS MINERALS INTERNATIONAL, INC., a Delaware corporation, and<br>DOES 1-10, inclusive<br>**YOU ARE BEING SUED BY PLAINTIFFS:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>ROBERT BURNHAM; SIERRA NEVADA CONSULTING INC., a Nevada<br>corporation | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Placer<br>**08/29/2024 at 03:50:18 PM**<br>By: Cindy P Baldock<br>Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF PLACER<br>UNLIMITED CIVIL DIVISION<br>10820 JUSTICE CENTER DRIVE<br>ROSEVILLE, CA 95678 | CASE NUMBER:<br>*(Número del Caso):*<br>**S-CV-0053505** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DOWNEY BRAND LLP   Telephone: 916.444.1000 Facsimile: 916.444.2100
MEGHAN M. BAKER (SBN 243765) | ALEXANDRA K. LAFOUNTAIN (SBN 301003)
621 CAPITOL MALL, 18TH FLOOR, SACRAMENTO, CA 95814

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* **Thursday, August 29, 2024** | Clerk, by<br>*(Secretario)* **Cindy P Baldock** | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* COMPASS MINERALS INTERNATIONAL, INC., a Delaware corporation
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
FORTRESS NORTH AMERICA, LLC, a Delaware limited liability company,
COMPASS MINERALS INTERNATIONAL, INC., a Delaware corporation, and
DOES 1-10, inclusive
**YOU ARE BEING SUED BY PLAINTIFFS:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROBERT BURNHAM; SIERRA NEVADA CONSULTING INC., a Nevada
corporation

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
08/29/2024 at 03:50:18 PM
By: Cindy P Baldock
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF PLACER
UNLIMITED CIVIL DIVISION
10820 JUSTICE CENTER DRIVE
ROSEVILLE, CA 95678

CASE NUMBER:
*(Número del Caso):*
S-CV-0053505

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DOWNEY BRAND LLP        Telephone: 916.444.1000 Facsimile:  916.444.2100
MEGHAN M. BAKER (SBN 243765) | ALEXANDRA K. LAFOUNTAIN (SBN 301003)
621 CAPITOL MALL, 18TH FLOOR, SACRAMENTO, CA 95814

DATE:
*(Fecha)* Thursday, August 29, 2024

Clerk, by        Cindy P Baldock        , Deputy
*(Secretario)*        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* FORTRESS NORTH AMERICA, LLC, a California limited liability company
under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Corp. Code §17701.16

4. ☒ by personal delivery on *(date):* 10.28.2024

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

# Exhibit B

DOWNEY BRAND LLP
MEGHAN M. BAKER (Bar No. 243765)
mbaker@downeybrand.com
ALEXANDRA K. LAFOUNTAIN (Bar No. 301003)
alafountain@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:    916.444.1000
Facsimile:    916.444.2100

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
**08/29/2024 at 03:50:18 PM**
By: Cindy P Baldock
Deputy Clerk

Attorneys for Plaintiffs
ROBERT BURNHAM and SIERRA NEVADA
CONSULTING INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF PLACER

ROBERT BURNHAM; SIERRA NEVADA
CONSULTING INC., a Nevada corporation,

Plaintiffs,

v.

FORTRESS NORTH AMERICA, LLC, a
California limited liability company,
COMPASS MINERALS INTERNATIONAL,
INC., a Delaware corporation, and DOES 1-
10, inclusive,

Defendants.

Case No. S-CV-0053505

**COMPLAINT**

Plaintiffs Robert Burnham and Sierra Nevada Consulting Inc. (collectively "Plaintiffs")

complain and allege the following:

**THE PARTIES**

1.    Plaintiff Robert Burnham ("Burnham") is an individual residing in Montana.

2.    Plaintiff Sierra Nevada Consulting Inc. ("SNC") is a Nevada corporation registered

to do business in California with its principal address at 4220 Duluth Avenue in Rocklin,

California.  SNC is wholly owned by Burnham.

/ / /

/ / /

4204740.3



3.     Defendant Fortress North America, LLC ("Fortress") is a Delaware limited liability company registered to do business in California with its principal address at 4220 Duluth Avenue in Rocklin, California.

4.     Defendant Compass Minerals International Inc. ("Compass") is a Delaware corporation headquartered in Kansas.  Compass is the parent company of Fortress.

5.     The true names and capacities of defendants sued herein as Does 1 through 10 are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs will amend this Complaint to show their true names and capacities when ascertained.  Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named defendants was responsible in some manner for the events and acts alleged herein, and thereby proximately caused injuries and damages to Plaintiffs.  Fortress and Compass and Does 1 through 10 are hereinafter referred to collectively as "Defendants."

6.     Plaintiffs allege that, at all times mentioned in this Complaint, each of the Defendants was the agent, servant, or employee of each of the other Defendants, and in doing the acts alleged in this Complaint was acting within the course and scope of that agency, employment, or representation, with the knowledge, consent, and approval of each of the other Defendants.

7.     Plaintiffs further allege that Compass is the alter ego of Fortress, which is an entirely owned subsidiary of Compass.  There is a unity of interest and ownership between Compass and Fortress such that any individuality and separateness between them has ceased to exist.  Compass and Fortress are controlled by the same Compass officers who supervise and manage both companies.  Among other things, Fortress executives directly report to Compass executives, and Compass' Human Resources department oversees and handles personnel issues relating to Fortress employees.  In addition, information relating to Fortress' business is exclusively maintained on Compass' website, which describes Fortress as "part of the Compass Minerals family since 2023."  Adherence to the fiction of the separate existence of Fortress as an entity distinct from Compass would permit an abuse of the corporate privilege, would sanction unfair business practices, and would promote injustice.

/ / /

DOWNEY BRAND LLP

8.      Plaintiffs also allege that Fortress and Compass are joint employers of Burnham and therefore jointly liable to Burnham for damages. As detailed below, when Burnham's employment was terminated without cause, he was specifically informed that his "employment with Compass Minerals and Fortress" would be ending. Compass executives had authority to terminate Fortress executives, even without cause, and exercised control over Fortress employees, including Burnham, who directly reported to Compass executives while he worked for Fortress.

**JURISDICTION AND VENUE**

9.      Fortress maintains an office in the State of California, is authorized to conduct business in California, and does conduct business in California. Compass conducts business in California, including through, by, and in connection with Fortress.

10.     Venue is proper in Placer County because Fortress contracted to perform an obligation in this county, entered into a contract in this county, was to perform that contract in this county, and/or breached the contract in this county. Venue is also proper in Placer County because Fortress maintains an office and conducts business in Placer County.

**GENERAL ALLEGATIONS**

11.     Burnham is a professional natural resource specialist with over 38 years of experience in natural resource planning, wildfire risk analysis, fire management, and utility right of way protection. He served as the Chief Deputy Director of Fire and Aviation Management for the USDI Bureau of Land Management before moving to the private sector and founding numerous successful vegetation management and fire-retardant businesses.

**Fortress Is Founded as a Start-Up Company**

12.     Prior to starting Fortress, Burnham had been engaged in consulting work through his wholly-owned company SNC.

13.     In or around 2018, Burnham co-founded Fortress with Michael Ashker ("Ashker"). Fortress is an innovative fire-retardant company that develops aerial and ground fire retardants. Its fire retardants effectively combat wildfires, and they are also designed to be safer for the environment than traditional fire retardants.

/ / /



DOWNEY BRAND LLP

4204740.3

3

COMPLAINT

1    14.    Burnham and Ashker each owned a significant interest in Fortress. Burnham

2    initially served at the CEO of the start-up company. Ashker initially served as the Chief Financial

3    Officer and Head of Business Strategy of Fortress. Ashker later transitioned to the roles of Chief

4    Operating Officer and Vice President of Finance.

5    15.    At the time Burnham and Ashker launched Fortress, the company was start-up with

6    limited funds. Because Fortress was in need of company vehicles, but did not have the capital or

7    ability to purchase them, Burnham purchased four trucks through his company SNC at the cost of

8    approximately $250,000, subject to the understanding that Fortress would eventually repay

9    Burnham or SNC for this purchase and that SNC would transfer title to these vehicles to Fortress.

10   Burnham fronted the payment of this expense without receiving any additional ownership interest

11   in Fortress and subject to an agreement that Burnham or SNC would be repaid.

12   16.    Along with other members of the Fortress leadership team, Burnham worked

13   tirelessly to develop Fortress into a successful fire-retardant business, working 70-80 hour weeks

14   as well as most weekends. Among other things, Burnham successfully helped recruit a top notch

15   operating team, most of whom still work for Fortress, led efforts to raise the necessary capital

16   from seed investors, helped develop a portfolio of advanced formula retardants, and oversaw years

17   of tedious U.S. Forest Service ("USFS") testing, resulting in Fortress becoming the first new

18   retardant company in over twenty years to have its products listed on the USFS Qualified Product

19   List. Burnham was also part of the leadership team who identified and successfully recruited two

20   of the most knowledgeable and accomplished PhD Chemists in the country, which led to the

21   development of a patent portfolio with over 20 issued patents. In addition, Burnham and the

22   Fortress leadership team cultivated the designing and building of state of the art retardant mixing

23   equipment that had computerized mixing capabilities and which performed flawlessly in wildfires

24   and air tanker base stage. In short, Burnham was part of a leadership team who built all aspects of

25   a state-of-the-art fire retardant company capable of supplying the U.S. federal and state

26   governments with up to 100% of their required annual retardant usage.

27   / / /

28   / / /

DOWNEY BRAND LLP

4204740.3

4

COMPLAINT

1

**Compass Invests in Fortress and Later Buys Fortress Outright**

2    17.    In 2020, Compass acquired an approximately 17% ownership interest in Fortress

3 through a series of investments that totaled $5 million dollars.  Compass took two Board seats at

4 the time of this acquisition.  Compass assigned these seats to Kevin Crutchfield, Compass's then

5 CEO, and Jamie Standen, Compass' then CFO.  Burnham and Ashker served as the other two

6 Board members.

7    18.    In October 2022, Compass increased its ownership to a 45% minority stake in

8 Fortress.  Compass retained its two seats on the Board of Directors.

9    19.    In December 2022, Fortress became the first new company in over two decades to

10 have its long-term aerial fire retardants added to the USFS Qualified Product List as fully qualified

11 after its FR-100 Powder and FR-200 Liquid Concentrate products satisfied all of the USFS's

12 stringent testing criteria.  Fortress successfully conducted the final revenue producing Operational

13 Field Evaluations (OFE) for both products bringing in over $2 million of revenue through these

14 OFE contracts, paid directly to Fortress by the USFS.

15    20.    In May 2023, under Burnham's leadership as CEO, Fortress entered into a contract

16 with the USFS to provide up to two million gallons of Fortress retardants and to deploy up to five

17 mobile-deployed fire-retardant air tanker bases to various air tanker bases as assigned by the

18 USFS.  This critical supply agreement was entered into after months of skilled negotiations by the

19 Fortress management team, through what is known as Alpha Negotiations, which Burnham helped

20 lead for Fortress in a meeting held in Boise, Idaho with USFS personnel.  The USFS contract was

21 the result of years of hard work, leadership, and strategic development of Fortress' fire-retardant

22 products.  The aggregate value of this contract was over $23 million dollars and was a guaranteed

23 contract with the USFS, which meant that Fortress would be paid on the full two million gallons

24 whether it was used or not.  As it turns out the USFS only used approximately 700,000 of the two

25 million gallons and Fortress and Compass were eventually paid for the entire two million gallons.

26 This made the contract highly profitable for Fortress and Compass, since Fortress' full inventory

27 of raw goods were not required to be used.

28 / / /

4204740.3

DOWNEY BRAND LLP

1          21.    Prior to Compass acquiring Fortress, Perimeter Solutions, the primary competitor

2   in the fire-retardant space, made several attempts to acquire Fortress and even presented Burnham

3   and Ashker with letters of intent in excess of $150 million dollars, which included guarantees of

4   future earn outs and continued employment for them both.  Burnham and Ashker presented this

5   information to Compass and allowed Compass to determine if it wanted to pursue the deal with

6   Perimeter Solutions or not.  Compass senior executives thereafter spent several months negotiating

7   with Perimeter Solutions and eventually decided that they preferred Compass to acquire Fortress.

8   By deferring to Compass and its preference in this regard, Burnham and Ashker forfeited their

9   opportunity to earn tens of millions of dollars on the sale of their ownership interests to Perimeter

10  Solutions.

11         22.    Thereafter in May of 2023, given the significant value of Fortress' assets, products,

12  supply contracts, and intellectual property, as well as the proven track records of its executives

13  Burnham and Ashker, Compass decided to acquire the outstanding 55% ownership interest in

14  Fortress, including the ownership interests of both Burnham and Ashker.  This transaction was

15  completed in May 2023.  The deal was structured in a way that allowed for Compass to pay for the

16  transaction in tranches as opposed to one lump sum payment.  This arrangement was largely based

17  on the long-standing trust and loyalty built over the four years of the executives of both companies

18  working closely together.

19         23.    Two critical deal terms of this acquisition were (1) that Fortress would be operated

20  as a separate subsidiary and would maintain its own brand, and (2) Compass' insistence that

21  Burnham and Ashker would remain as Fortress executives so they could continue leading and

22  developing its business.  As part of the deal, Compass insisted that Burnham and Ashker sign

23  employment agreements so they would remain employees of Fortress until May 5, 2025, a date

24  which aligned with the projected timeline of when the 2025 fire retardants for the USFS were due

25  to be awarded.  Burnham did so.  Burnham's employment agreement is attached hereto as

26  **Exhibit A**.

27         24.    Burnham's employment agreement specified that if he was terminated without

28  cause, all "Re-Vest" payments owed to him for selling his ownership interests in Fortress would

4204740.3

DOWNEY BRAND LLP

1 become accelerated and become immediately due and payable.  These "Re-Vest" payments are

2 worth nearly $10 million dollars to Burnham.

3      25.    In its May 9, 2023 press release, Compass announced its new 100% ownership

4 stake in Fortress and its confidence in Fortress' fire-retardant products along with Fortress'

5 earning potential.  The press release also highlighted that Burnham would continue to serve as

6 Fortress' leader and CEO.

7      26.    After selling his ownership interests to Compass, Burnham remained employed at

8 Fortress and continued to effectively lead the company.  For example, Burnham helped

9 successfully manage the Fortress teams to successfully develop and deploy their new state of the

10 art mixing technology and retardant loading equipment to five air bases in diverse locations from

11 Washington State to lower Arizona.  The team successfully mixed retardant, manufactured and

12 transported retardant and loaded 100s of loads of high volume large air tankers across multiple

13 states.  The USFS staff consistently offered high praise to the efficiency of Fortress' equipment

14 and its air base staff.

15 **Burnham's Termination without Cause**

16      27.    While Burnham was still working to ensure Fortress' continued success in 2023

17 and beyond, he was  also taking care of his wife during her ongoing cancer treatments.  At the

18 very same time, Burnham was receiving medical treatment for his own serious heart condition,

19 which required him eventually to undergo cardiac surgery in October 2023.

20      28.    Throughout 2023, both Compass and Fortress knew that Burnham was his wife's

21 devoted caretaker during and in between her cancer treatments.  They also knew he was suffering

22 from his own serious medical condition and required heart surgery and an accompanying leave of

23 absence to undergo and recover from this major operation.

24      29.    Burnham was upfront with Compass and Fortress about the significant medical

25 challenges he and his wife were facing.  His employment agreement specifically allowed him to

26 resign from Fortress prior to the termination date of May 5, 2025, due to his own health condition

27 or an immediate family member's health condition.  If Burnham resigned from Fortress for either

28 ///

DOWNEY BRAND LLP

4204740.3

7

COMPLAINT

1  of these reasons, his employment agreement provided that his "Re-Vest" payments would be

2  accelerated and due to him immediately.

3      30.    Pursuant to his employment agreement, Burnham directly reported to executives at

4  Compass. After its purchase of Fortress, Compass' executives never informed Burnham that his

5  job performance was unsatisfactory or that he was in breach of his employment agreement in any

6  way, shape or form. To the contrary, after Compass acquired Fortress, Burnham repeatedly

7  received positive feedback regarding his work. However, despite Burnham's continued, well-

8  documented success running Fortress, Burnham's employment with Fortress was abruptly

9  terminated by Defendants without cause and without any advance notice on August 30, 2023.

10  Defendants terminated Burnham at a time where they knew he was in the hospital attending to his

11  wife, and shortly before his own scheduled heart surgery and his planned leave of absence from

12  the company for this procedure and his recovery. Fortress and Compass' conduct during and after

13  his termination was cruel, unwarranted, and inexplicable.

14      31.    Indeed, Burnham only learned about his termination from Compass' CFO Jamie

15  Standen ("Standen") when he asked to speak with Burnham on August 30, 2023 via video

16  conference. Burnham advised Standen that he was unable to speak with Standen that day because

17  Burnham was with his wife at the hospital while she was undergoing invasive chemotherapy

18  treatment. Rather that postponing a video or conference call to another day when Burnham was

19  no longer with his wife at the hospital, Standen terminated Burnham in a text message that same

20  morning. Standen informed Burnham that "the company has decided that today will be your last

21  day of employment with Compass Minerals and Fortress."

22      32.    However, in that same text message, Standen informed Burnham that Compass

23  "would value your continued participation in the business in a consulting role."

24      33.    Standen proposed in his text message to Burnham that the parties "structure your

25  termination as mutual." Compass and Fortress did not assert that Burnham had been terminated

26  for cause, and no grounds existed to terminate Burnham for cause.

27      34.    Compass' Vice President of Human Resources Brandy Johnson reiterated that

28  Compass and Fortress wanted Burnham to continue working in a consulting role, stating in a

DOWNEY BRAND LLP

1   follow-up email: "We remain invested in a smooth transition and would value your continued
2   participation in the business in a consulting role."

3      35.    Both Standen and Johnson's communications confirmed there was no basis to
4   terminate Burnham for cause.  Had cause existed, Defendants never would have proposed
5   Burnham's termination as "mutual" and his "continued participation in the business" as a
6   consultant.

7      36.    Although Compass and Fortress had no cause to terminate Burnham under his
8   employment agreement, Fortress failed to thereafter pay Burnham the accelerated "Re-Vest"
9   payments that became immediately due to him under that agreement.

10      37.    Worse, after Burnham's termination, and while he was still recovering from his
11   surgery and complications from that surgery, Compass sought to interview Burnham as part of a
12   belated, bad faith, and transparent effort to manufacture a basis for suggesting that Burnham was
13   terminated for cause and had forfeited his right to any "Re-Vest" payments under his employment
14   agreement.  Burnham, however, could not participate in this interview because he suffered a stroke
15   during his heart surgery which prevented him from participating in the proposed interview.
16   Compass was advised that Burnham's health condition prevented him from participating.

17      38.    Unfortunately, despite Burnham and his wife's significant health challenges and
18   Burnham's clear right to immediate "Re-Vest" payments under his employment agreement in
19   2023, Compass and Fortress have steadfastly refused to act in good faith.  To date, Defendants
20   have still failed to pay all of the Re-Vest payments that remain due and owing to Burnham under
21   his employment agreement, as well as other payments due and owing to him upon the termination
22   of his employment without cause.

23      39.    Shortly before Burnham's termination from Fortress, the company had begun the
24   process to obtain funds necessary to re-pay Burnham or his company SNC for the four trucks that
25   SNC had purchased for Fortress and that Fortress had been utilizing.  In reliance on and with the
26   understanding that this payment was forthcoming, Burnham signed the paperwork to transfer title
27   for some or all of these trucks from SNC to Fortress.  Shortly thereafter, Burnham was terminated
28   and Fortress refused to pay SNC or Burnham for the vehicles.



DOWNEY BRAND LLP

4204740.3

9



1    40.    Compass and Fortress terminated Burnham without cause shortly before Burnham

2 was entitled to bonuses for his exceptional work for the company. As a result of the actions of

3 Compass and Fortress, Burnham did not receive his anticipated bonus.

4    41.    Compass and Fortress acted in bad faith toward Burnham since terminating him

5 without cause. Defendants demanded that Burnham sign a separation agreement that contained

6 unreasonable provisions. Burnham remains willing to execute a separation agreement with

7 reasonable terms, including a reasonable release, but Defendants have refused to negotiate in good

8 faith.

9    42.    Shortly after Compass and Fortress terminated Burnham, they also terminated

10 Ashker.

11    43.    Once Burnham and Ashker were terminated without cause, their ability to influence

12 future outcomes regarding testing or government contracting, was eliminated. This was never the

13 intent of their employment agreements. Rather, the employment agreements were meant to be

14 assurances to Compass that Burnham and Ashker's skills, experience and services would be

15 retained with the focus on navigating the company through the complexities of government

16 contracting and specifically in dealing with a 20-year fire retardant monopoly enjoyed by

17 Perimeter Solutions. By terminating Burnham and Ashker, Fortress and Compass made a

18 unilateral decision to take full responsibility for this task. This act alone demands that Fortress

19 and Compass reimburse Burnham for his milestone payments, which they no longer had any way

20 of proactively earning due to their dismissal without cause.

21    44.    Prior to filing this action, Burnham exhausted his administrative remedies by filing

22 a timely administrative complaint with the California Civil Rights Department (CRD) and

23 received a CRD right-to-sue letter, which is attached hereto as **Exhibit B**.

### FIRST CAUSE OF ACTION

**Breach of Contract**

**By Burnham against Defendants**

27    45.    Burnham incorporates by reference all of the allegations in the preceding

28 paragraphs as though fully set forth herein.

DOWNEY BRAND LLP

1   46. Burnham's employment agreement is a written contract between Defendants and

2 Burnham.  The contract required Fortress to give Burnham at least 60 days of notice before

3 terminating his employment, unless the termination was for cause.  If Burnham was terminated

4 without cause, his employment agreement required (1) acceleration of his "Re-Vest" payments, (2)

5 payment of all "Accrued Amounts," which includes unpaid base salary, vacation, annual bonus

6 and employee benefits as more specifically set forth therein, and (3) a lump sum payment equal to

7 six (6) months of his base salary.

8   47. Burnham performed all, or substantially all, of the significant obligations that the

9 agreement required him to perform.  In the alternative, Burnham was excused from having to

10 perform any additional obligations under the agreement.

11   48. All conditions, if required, for Defendants to perform occurred, or in the

12 alternative, any such conditions were waived and excused.

13   49. Defendants breached Burnham's employment agreement.  These breaches include,

14 but are not limited to, terminating Burnham without cause, failing to give Burnham at least 60

15 days of notice before terminating his employment, failing to pay Burnham the amounts owed to

16 him for termination without cause, and failing to make the accelerated "Re-Vest" payments that

17 became due and owing to Burnham upon his termination without cause.

18   50. As a direct and proximate result of Defendants' breaches, Burnham incurred

19 damages in an amount to be proven at trial.  In addition and/or in the alternative, Burnham seeks

20 restitution from Defendants for unjust enrichment.

21   51. WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

22          **SECOND CAUSE OF ACTION**

23            **Declaratory Relief**

24         **By Burnham against Defendants**

25   52. Burnham incorporates by reference all of the allegations in the preceding

26 paragraphs as though fully set forth herein.

27   53. A dispute and actual controversy has arisen and now exists between Burnham and

28 Defendants regarding acceleration of the "Re-Vest" payments under section 4.7 of his

DOWNEY BRAND LLP

4204740.3

11

COMPLAINT

1  employment agreement.

2    54.   Burnham asserts, and Defendants deny, that Burnham is entitled to acceleration of
3  the "Re-Vest" payments pursuant to the terms of his employment agreement, including under
4  section 4.7 of the agreement.

5    55.   Burnham therefore seeks a declaration that he is entitled to immediate acceleration
6  of the "Re-Vest" payments under his employment agreement.

7    56.   WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

8  **THIRD CAUSE OF ACTION**

9  **Breach of The Implied Covenant of Good Faith and Fair Dealing Against Defendants**
10  **By Burnham against Defendants**

11    57.   Burnham incorporates by reference all of the allegations in the preceding
12  paragraphs as though fully set forth herein.

13    58.   Every contract contains an implied covenant of good faith and fair dealing to
14  prevent one party from unfairly frustrating the benefits the other party was entitled to receive
15  under the contract.  Burnham's employment agreement contained this implied covenant.

16    59.   In Burnham's employment agreement, Defendants agreed that Burnham could
17  resign as Fortress' CEO for "Good Reason," which included his own health condition or an
18  immediate family member's health condition, and that Burnham was entitled to certain payments
19  upon resignation for "Good Reason."  Defendants, however, intentionally frustrated the purpose of
20  the contract and unfairly interfered with the benefits of the contract to Burnham.  Rather than
21  allowing Burnham the opportunity to evaluate and exercise his right to resign for "Good Reason"
22  based on his or his wife's serious medical condition, Defendants terminated Burnham without
23  notice and without cause.

24    60.   As a direct and proximate result of Defendants' breaches of the implied covenant,
25  Burnham has been damaged in an amount to be proven at trial.  In addition and/or in the
26  alternative, Burnham seeks restitution from Fortress for unjust enrichment.

27    61.   WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

28



DOWNEY BRAND LLP

4204740.3

12

COMPLAINT

**FOURTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**By Burnham Against Defendants**

62.     Burnham incorporates by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

63.     Defendants' conduct was outrageous.  On August 30, 2023, Defendants terminated Burnham's employment without cause via text message, when Defendants fully knew and understood that Burnham was with his wife at the hospital, where she was receiving chemotherapy, and shortly before Burnham's scheduled heart surgery.  After terminating Burnham without cause, and during his ongoing recovery from heart surgery and complications from a stroke, Defendants then tried to initiate a belated and bad faith investigation in a wrongful, transparent effort to claim they had cause to terminate him.

64.     Defendants intended to cause Burnham emotional distress or acted with reckless disregard of the probability that Burnham would suffer emotional distress.

65.     Burnham suffered severe emotional distress relating to his termination, and Defendants were a substantial factor in causing Burnham's severe emotional distress and challenging recovery from his major medical surgery and subsequent stroke.

66.     Burnham is informed, believes and thereon alleges that Defendants' directors, officers, and/or managing agents engaged in and ratified this intentional misconduct by Defendants.

67.     As a direct and proximate result of Defendants' conduct, Burnham has already suffered and will continue to suffer damages in an amount according to proof.  Burnham also seeks punitive damages for Defendants' intentional, malicious, and oppressive conduct. Defendants were guilty of malice, oppression, and a willful, despicable, and conscious disregard of the rights of Burnham.

68.     WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

/ / /

/ / /

DOWNEY BRAND LLP

## FIFTH CAUSE OF ACTION

### Disability Discrimination (Gov. Code § 12940(m))

### By Burnham Against Defendants

69.    Burnham incorporates by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

70.    Defendants were Burnham's employer.

71.    Burnham was the CEO of Fortress and reported to Compass executives.

72.    Burnham had a serious heart condition that limited major life activities and required cardiac surgery and an accompanying leave of absence to undergo and recover from this serious medical procedure.

73.    Defendants knew about Burnham's heart condition, its limitation on major life activities, and that this condition necessitated surgery and a leave of absence.

74.    Burnham had been successfully performing the essential duties of his job as Fortress' CEO and if he had been afforded leave to undergo and recover from heart surgery as a reasonable accommodation, he would have been able to resume his job duties after recovery from the surgery.

75.    Defendants failed to provide Burnham the reasonable accommodation of leave or modified job duties relating to his heart condition and accompanying surgery, and Burnham was harmed.

76.    Defendants' failure to provide reasonable accommodation was a substantial factor in causing Burnham's harm, and Burnham was terminated without cause shortly before his planned surgery.

77.    Defendants' directors, officers, and/or managing agents, including but not limited to Jamie Standen, engaged in and ratified this intentional misconduct by Defendants.

78.    As a direct and proximate result of Defendants' conduct, Burnham has already suffered and will continue to suffer damages in an amount according to proof.  Burnham also seeks punitive damages for Defendants' intentional, malicious, and oppressive conduct. Defendants were guilty of malice, oppression, and a willful, despicable, and conscious disregard

DOWNEY BRAND LLP

4204740.3

14

COMPLAINT

1 | of the rights of Burnham.

2 |     79.    Burnham is entitled to damages according to proof and recovery of his attorney's

3 | fees under the Fair Employment and Housing Act.

4 |     80.    WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

5 | **SIXTH CAUSE OF ACTION**

6 | **Retaliation (Gov. Code § 12940(h))**

7 | **By Burnham Against Defendants**

8 |     81.    Burnham incorporates by reference all of the allegations in the preceding

9 | paragraphs as though fully set forth herein.

10 |     82.    Burnham informed Defendants about his serious medical condition, which required

11 | heart surgery in October 2023 and a leave of absence to recover from this surgery.

12 |     83.    Before Burnham's planned surgery, Defendants discharged Burnham as Fortress'

13 | CEO.

14 |     84.    Burnham's serious medical condition and accompanying surgery were a substantial

15 | motivating reason for Defendants' decision to discharge Burnham, which also prevented him from

16 | evaluating and exercising the rights under his employment agreement relating to his known health

17 | condition.

18 |     85.    Defendants' decision to discharge Burnham was a substantial factor in causing him

19 | harm.

20 |     86.    Defendants' directors, officers, and/or managing agents, including but not limited

21 | to Jamie Standen, engaged in and ratified this intentional misconduct by Defendants.

22 |     87.    As a direct and proximate result of Defendants' conduct, Burnham has already

23 | suffered and will continue to suffer damages in an amount according to proof.  Burnham also

24 | seeks punitive damages for Defendants' intentional, malicious, and oppressive conduct.

25 | Defendants were guilty of malice, oppression, and a willful, despicable, and conscious disregard

26 | of the rights of Burnham.

27 |     88.    Burnham is entitled to damages according to proof and recovery of his attorney's

28 | fees under the Fair Employment and Housing Act.

DOWNEY BRAND LLP

1    89.    WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

2    **SEVENTH CAUSE OF ACTION**

3    **Failure to Reimburse Necessary Expenditures (Labor Code § 2802)**

4    **By Burnham against Defendants**

5    90.    Burnham incorporates by reference all of the allegations in the preceding

6  paragraphs as though fully set forth herein.

7    91.    Burnham incurred expenditures and losses as a direct consequence of discharging

8  his job duties as Fortress' CEO and obeying the directions of the company and Compass.

9    92.    Burnham through his company SNC incurred necessary and reasonable

10  expenditures and losses of approximately $250,000 to purchase four company vehicles for

11  Fortress and transfer title of the vehicles to Fortress pursuant to the understanding that

12  Burnham/SNC would be reimbursed in full for this considerable expense.

13    93.    Defendants have failed to reimburse Burnham/SNC for the approximately

14  $250,000 that he reasonably and necessarily incurred purchasing four Fortress company vehicles.

15    94.    Burnham is entitled not only to reimbursement for all of these expenses but also to

16  recovery of his attorney's fees under Labor Code section 2802.

17    95.    WHEREFORE, Burnham seeks relief as set forth in the Prayer for Relief below.

18    **EIGHTH CAUSE OF ACTION**

19    **Breach of Contract**

20    **By Burnham and SNC against Defendants**

21    96.    Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs

22  as though fully set forth herein.

23    97.    Burnham, through his company SNC, purchased four trucks for Fortress at the cost

24  of approximately $250,000, subject to an oral or implied in fact agreement that Fortress would

25  repay Burnham or SNC for this purchase and SNC would transfer title to these vehicles to

26  Fortress.

27    98.    Fortress has had exclusive possession and use of the four trucks at all times since

28  their purchase.

DOWNEY BRAND LLP

4204740.3

16

COMPLAINT

1    99.    Shortly before Burnham's termination, Fortress had begun the process to obtain

2    funds necessary to pay Burnham/SNC for the four trucks. After Burnham was terminated,

3    Fortress refused to pay for these vehicles.

4    100.    Burnham and SNC performed all, or substantially all, of the significant obligations

5    that the agreement required them to perform. In the alternative, Burnham and SNC were excused

6    from having to perform any additional obligations under the agreement.

7    101.    All conditions, if required, for Defendants to perform occurred, or in the

8    alternative, any such conditions were waived and excused.

9    102.    By refusing to reimburse Burnham or SNC for the trucks, Fortress has breached its

10    contract with Burnham and SNC.

11    103.    As a direct and proximate result of Defendants' breaches, Burnham and SNC

12    incurred damages in an amount to be proven at trial. In addition and/or in the alternative,

13    Burnham seeks restitution from Defendants for unjust enrichment.

14    104.    WHEREFORE, Plaintiffs seek relief as set forth in the Prayer for Relief below.

15    **NINTH CAUSE OF ACTION**

16    **Conversion**

17    **By Burnham and SNC against Defendants**

18    105.    Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs

19    as though fully set forth herein.

20    106.    Fortress currently maintains an office at 4220 Duluth Avenue in Rocklin,

21    California (the "Rocklin Facility"). Prior to Fortress operating out the of the Rocklin Facility,

22    SNC, Burnham's company, operated out of the same facility, and before that, another company

23    Burnham operated was headquartered at the same facility. Burnham thus had been working in the

24    Rocklin Facility for a significant period of time and has accumulated personal belongings there.

25    107.    When Fortress terminated Burnham, Defendants did not give him the opportunity

26    to clear out his property or SNC's property from the Rocklin Facility, nor did Defendants facilitate

27    the return of this property to Plaintiffs.

28    / / /

DOWNEY BRAND LLP

4204740.3

1      108.    Defendants have intentionally and substantially interfered with Burnham and

2 SNC's legal interest by maintaining possession of their personal property, preventing their access

3 to and possession of their personal property, and refusing to turn over their personal property to

4 SNC and Burnham, despite their repeated requests that Defendants do so.

5      109.    Burnham and SNC did not consent to Defendants' interference with their property

6 rights and, in fact, demanded that Defendants release all of their property. Defendants ignored and

7 evaded Burnham and SNC's demands and instead chose to use and retain this property and

8 prevented Burnham and SNC's ability to obtain or use their personal property.

9      110.    As a direct and proximate result of Defendants' conversion, Burnham and SNC

10 incurred damages in an amount to be proven at trial. In addition and/or in the alternative,

11 Plaintiffs seek restitution from Defendants for unjust enrichment. In addition or/in the alternative,

12 Plaintiffs seek the return of their property.

13      WHEREFORE, Burnham and SNC seek relief as set forth in the Prayer for Relief below.

14                        **TENTH CAUSE OF ACTION**

15                             **Unfair Business Practices**

16                   **By Burnham and SNC against Defendants**

17      111.    Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs

18 as though fully set forth herein.

19      112.    Defendants engaged in unfair competition as defined by California Business and

20 Professions Code, section 17200, *et seq.*, in that it used unfair, unlawful, and/or fraudulent

21 business practices in the manner described above.

22      113.    Plaintiffs have lost money and/or property as a result of Defendants' unfair,

23 unlawful, and/or fraudulent business practices.

24      114.    As a result of Defendants' above-described unlawful, unfair, and/or fraudulent

25 business practices, Plaintiffs are entitled to restitution in an amount to be proven at trial.

26      115.    WHEREFORE, Plaintiffs seek relief as set forth in the Prayer for Relief below.

27 / / /

28 / / /

DOWNEY BRAND LLP

4204740.3

18

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    Compensatory damages according to proof;

2.    Interest;

3.    Punitive damages;

4.    Declaratory relief;

5.    Costs of suit incurred herein;

6.    Attorney's fees;

7.    Such other legal or equitable relief the Court may find proper, including but not limited to, restitution.

DATED: August 29, 2024          DOWNEY BRAND LLP


By:  _____
        MEGHAN M. BAKER
        ALEXANDRA K. LAFOUNTAIN
        Attorneys for Plaintiffs
        ROBERT BURNHAM and SIERRA NEVADA
        CONSULTING INC.

DOWNEY BRAND LLP

4204740.3                            19
                            COMPLAINT

# Exhibit A

## AMENDED & RESTATED EMPLOYMENT AGREEMENT

This AMENDED & RESTATED EMPLOYMENT AGREEMENT (the "**Agreement**") is made and entered into as of May 5, 2023, by and between Robert Burnham, a Montana resident (the "**Executive**"), and FORTRESS NORTH AMERICA, LLC, a Delaware limited liability company (the "**Company**").

WHEREAS, the Company currently employs the Executive as the Chief Executive Officer of the Company;

WHEREAS, substantially concurrently with the execution of this Agreement, the Company and an affiliate of Compass Minerals International, Inc. (together with its affiliates, "**Compass Minerals**"), have entered into that certain Membership Interest Purchase Agreement (the "**MIPA**"), dated as of the date hereof, pursuant to which Compass Minerals will acquire all of the outstanding membership interests of the Company (the "**Transaction**");

WHEREAS, the Company desires to continue to employ the Executive on the terms and conditions set forth herein;

WHEREAS, the Executive desires to continue to be employed by the Company on such terms and conditions;

WHEREAS, the Company and the Executive entered into that certain Employment Agreement, dated as of October 15, 2021 (the "**Existing Agreement**"); and

WHEREAS, effective as of, and contingent upon, the consummation of the Transaction, the Company and the Executive desire to amend and restate the Existing Agreement in its entirety with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants, promises, and obligations set forth herein, the parties agree as follows:

1.      Term. The term of this Agreement shall commence effective as of, and contingent upon, the date the Transaction is consummated (the "**Effective Date**") and shall continue until May 5, 2025, unless terminated earlier pursuant to Section 5 of this Agreement. The period during which the Executive is employed by the Company hereunder is hereinafter referred to as the "**Employment Term.**"

2.      Position and Duties.

2.1      Position. During the Employment Term, the Executive shall continue to serve in his current role as Chief Executive Officer of the Company and shall report to such person or body (the "**Reporting Person**") as may be designated from time to time by the Chief Executive Officer of Compass Minerals (the "**Compass CEO**"), in his or her sole discretion, or, if no such person or body has been designated, the Compass CEO. As of the date of this Agreement, the initial Reporting Person is the Chief Commercial Officer of Compass Minerals. In such position, the Executive shall continue to focus on the development, management and oversight of the Company with such duties, authority, and responsibilities as shall be

determined from time to time by the Reporting Person, which duties, authority, and responsibilities are consistent with the Executive's position.

2.2    Duties. During the Employment Term, the Executive shall devote substantially all of the Executive's business time and attention to the performance of the Executive's duties hereunder and will not engage in any other business, profession, or occupation for compensation or otherwise which would materially interfere with the performance of such services either directly or indirectly without the prior written consent of the Compass CEO. Notwithstanding the foregoing, the Executive will be permitted to: (a) act or serve as a director, trustee, committee member, principal, or consultant of FRS Group LLC, Fortress Wildfire Insurance Group, LLC or any of their respective affiliates; (b) with the prior written consent of the Compass CEO (which consent can be withheld by the Compass CEO in his or her discretion) act or serve as a director, trustee, committee member, or principal of any type of business, civic, or charitable organization; and (c) subject to any policies or restrictions established by Compass Minerals from time to time, purchase or own less than five percent (5%) of the publicly traded securities of any corporation; provided that, such ownership represents a passive investment and that the Executive is not a controlling person of, or a member of a group that controls, such corporation; provided further that, the activities described in clauses (a), (b), and (c) do not materially interfere with the performance of the Executive's duties and responsibilities to the Company as provided hereunder, including, but not limited to, the obligations set forth in Section 2 hereof.

3.    Place of Performance. The principal place of the Executive's employment shall be the Company's principal executive office in Rocklin, California and Stevensville, Montana; provided that the Executive may be required to travel on Company business during the Employment Term.

4.    Compensation.

4.1    Base Salary. The Company shall pay the Executive an annual base salary of $290,000.00 (the "**Base Salary**") in periodic installments in accordance with the Company's customary payroll practices and applicable wage payment laws, but no less frequently than monthly. The Executive's Base Salary shall be reviewed at least annually by the Reporting Person and the Reporting Person may, but shall not be required to, increase the Base Salary during the Employment Term.

4.2    Annual Bonus. For each fiscal year of the Employment Term, the Executive shall be eligible to earn a discretionary annual bonus (the "**Annual Bonus**") of up to 50% of Base Salary based upon the Reporting Person's evaluation of the Executive's job performance during such period. Except as otherwise provided in Section 5, in order to be eligible to earn an Annual Bonus, the Executive must be employed by the Company on the last day of the applicable period that Annual Bonuses are paid.

4.3    Fringe Benefits and Perquisites. During the Employment Term, the Executive shall be entitled to fringe benefits and perquisites consistent with the practices of the Company and governing benefit plan requirements (including plan eligibility provisions).

2

4.4     Employee Benefits. During the Employment Term, the Executive shall be entitled to participate in all employee benefit plans, practices, and programs maintained by the Company, as in effect from time to time (collectively, "**Employee Benefit Plans**"), to the extent consistent with applicable law and the terms of the applicable Employee Benefit Plans. The Company reserves the right to amend or terminate any Employee Benefit Plans at any time in its sole discretion, subject to the terms of such Employee Benefit Plan and applicable law.

4.5     Vacation; Paid Time Off. During the Employment Term, the Executive shall be entitled to paid vacation days in accordance with the Company's vacation policies, as in effect from time to time. The Executive shall receive other paid time off in accordance with the Company's policies for executive officers as such policies may exist from time to time.

4.6     Business Expenses. The Executive shall be entitled to reimbursement for all reasonable and necessary out-of-pocket business, entertainment, and travel expenses incurred by the Executive in connection with the performance of the Executive's duties hereunder in accordance with the Company's expense reimbursement policies and procedures.

4.7     Re-Vest. The Executive agrees and acknowledges that the Re-Vest Portion of the Milestone Payments (each as defined in the MIPA) shall be subject to vesting and forfeiture in accordance with this Section 4.7. Beginning on the date of this Agreement and continuing for a period of two (2) years thereafter (the "**Re-Vest Period**"), the Re-Vest Portion shall vest in equal *pro rata* portions (i.e., one-eighth) on the first (1st) day of each calendar quarter occurring in the Re-Vest Period. In the event the Company terminates the Executive's employment without Cause or due to death or disability or the Executive resigns for Good Reason or in connection with or due to personal health conditions of the Executive or the Executive's immediate family that the parties mutually agree necessitate that the Executive withdraw or significantly reduce the Executive's daily workload in such manner that the Executive cannot provide best efforts to perform his duties and responsibilities under prevailing conditions, subject to the Executive's compliance with the post-termination obligations contained in Section 7 and the Employee Confidentiality and Proprietary Rights Agreement and the Executive's execution of the Release (defined below) in accordance with Section 5.2(b), the Re-Vest Portion shall automatically accelerate, and the unvested portion of the Re-Vest Portion as of such date shall be deemed vested as of the date of such termination. In the event the Executive resigns employment with the Company without Good Reason or is terminated for Cause, the unvested portion of the Re-Vest Portion as of such date of resignation or termination, as applicable, shall immediately and automatically be deemed forfeited. The Executive will timely file an election pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended (the "**Code**") upon receipt of any restricted shares in connection with the Re-Vest Portion, and provide a copy of such timely and validly filed election to the Company promptly thereafter.

5.     Termination of Employment. The Employment Term and the Executive's employment hereunder may be terminated by either the Company or the Executive at any time and for any reason; provided that, unless otherwise provided herein, either party shall be required to give the other party at least sixty (60) days' advance written notice of any termination of the Executive's employment, except that the Company may terminate the Executive for Cause with immediate effect. On termination of the Executive's employment during the Employment Term, the

3

Executive shall be entitled to the compensation and benefits described in this Section 5 and shall have no further rights to any compensation or any other benefits from the Company or any of its affiliates.

     5.1    <u>For Cause, or Without Good Reason.</u>

     (a)    The Executive's employment hereunder may be terminated by the Company for Cause or by the Executive without Good Reason. If the Executive's employment is terminated by the Company for Cause or by the Executive without Good Reason, the Executive shall be entitled to receive:

     (i)    any accrued but unpaid Base Salary and any accrued but unused vacation which shall be paid in accordance with the Company's customary payroll procedures (but no later than the Executive's last day of employment if terminated by the Company for Cause);

     (ii)    any earned but unpaid Annual Bonus with respect to any completed fiscal year immediately preceding the Termination Date, which shall be paid on the otherwise applicable payment date; provided that, if the Executive's employment is terminated by the Company for Cause, then any such accrued but unpaid Annual Bonus shall be forfeited;

     (iii)    reimbursement for unreimbursed business expenses properly incurred by the Executive, which shall be subject to and paid in accordance with the Company's expense reimbursement policy; and

     (iv)    such employee benefits (including equity compensation), if any, to which the Executive may be entitled under the Company's Employee Benefit Plans as of the Termination Date; provided that, in no event shall the Executive be entitled to any payments in the nature of severance or termination payments except as specifically provided herein.

     Items 5.1(a)(i) through 5.1(a)(iv) are referred to herein collectively as the "**Accrued Amounts**".

     (b)    For purposes of this Agreement, "**Cause**" shall mean:

     (i)    the Executive's failure to perform Executive's duties (other than any such failure resulting from incapacity due to physical or mental illness) or failure to comply with any valid and legal directive of the Company;

     (ii)    the Executive's engagement in dishonesty, illegal conduct, or gross misconduct, which is, in each case, materially injurious to the Company or its affiliates, including but not limited to embezzlement, misappropriation, or fraud, whether or not related to the Executive's employment with the Company;

4

(iii)     the Executive's conviction of or plea of guilty or nolo contendere to a crime that constitutes a felony (or state law equivalent) or a crime that constitutes a misdemeanor involving moral turpitude, if such felony or other crime is work-related, materially impairs the Executive's ability to perform services for the Company, or results in material reputational or financial harm to the Company or its affiliates;

(iv)     the Executive's material violation of the Company's written policies or codes of conduct, including written policies related to discrimination, harassment, performance of illegal or unethical activities, and ethical misconduct; or

(v)     the Executive's material breach of any material obligation under this Agreement or any other written agreement between the Executive and the Company.

Notwithstanding the foregoing, Cause shall not apply in the case of clause (i), (iv) or (v) if (A) the Compass CEO determines a cure is possible and (B) by no later than 30 days following the occurrence of such circumstances or conditions, the Executive cures such circumstances or conditions to the Compass CEO's satisfaction.

(c)     For purposes of this Agreement, "**Good Reason**" shall mean the occurrence of any of the following, in each case during the Employment Term without the Executive's written consent:

(i)     a reduction in the Executive's Base Salary, other than a general reduction in Base Salary that affects all similarly situated executives in substantially the same proportions;

(ii)     a reduction in the Executive's Target Bonus opportunity, other than a general reduction in Target Bonus opportunity that affects all similarly situated executives in substantially the same proportions;

(iii)     a relocation of the Executive's principal place of employment by more than 25 miles;

(iv)     any material breach by the Company of any material provision of this Agreement;

(v)     a material, adverse change in the Executive's authority, duties, or responsibilities (other than temporarily while the Executive is physically or mentally incapacitated or as required by applicable law); or

(vi)     the Company's failure to obtain an agreement from any successor to the Company to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no succession had taken place, except where such assumption occurs by operation of law.

5

The Executive cannot terminate employment for Good Reason unless the Executive has provided written notice to the Company of the existence of the circumstances providing grounds for termination for Good Reason within thirty (30) days of the initial existence of such grounds and the Company has had at least fifteen (15) days from the date on which such notice is provided to cure such circumstances. If the Executive does not terminate employment for Good Reason within ninety (90) days after the first occurrence of the applicable grounds, then the Executive will be deemed to have waived the right to terminate for Good Reason with respect to such grounds.

5.2     Without Cause or for Good Reason. The Employment Term and the Executive's employment hereunder may be terminated by the Executive for Good Reason or by the Company without Cause. In the event of such termination (other than account on death or Disability), the Executive shall be entitled to receive:

(a)     Any applicable Accrued Amounts; and

(b)     Subject to the Executive's compliance with the post-termination obligations contained in Section 7 and the Employee Confidentiality and Proprietary Rights Agreement and the Executive's execution of a release of claims in favor of the Company, its affiliates and their respective officers and directors in a form provided by the Company (the "**Release**"), to be effective according to its terms, the Executive shall be entitled to receive a lump sum payment equal to six (6) months of the Executive's Base Salary, which shall be paid in accordance with the Company's normal payroll practices.

5.3     Death or Disability.

(a)     The Executive's employment hereunder shall terminate automatically on the Executive's death during the Employment Term, and the Company may terminate the Executive's employment with immediate effect on account of the Executive's Disability.

(b)     If the Executive's employment is terminated during the Employment Term on account of the Executive's death or Disability, the Executive (or the Executive's estate and/or beneficiaries, as the case may be) shall be entitled to receive:

(i)     Any applicable Accrued Amounts, provided that any accrued but unpaid Base Salary and any accrued but unused vacation shall be paid in accordance with the Company's customary payroll procedures (but no later than 72 hours after the Employer learns of the Executive's death or Disability); and

(ii)     Subject to the Executive's compliance with the post-termination obligations contained in Section 7 and the Employee Confidentiality and Proprietary Rights Agreement and the Executive's execution of the Release, to be effective according to its terms, the Executive shall be entitled to receive a lump sum payment equal to the product of the Annual Bonus, if any, that the Executive would have earned based on actual performance for the then-current

6

fiscal year in which the Executive's death or Disability occurs and a fraction, the numerator of which is the number of days the Executive was employed by the Company during the then-current fiscal year and the denominator of which is the number of days in such year, paid on the date that the Annual Bonus would otherwise be paid to the Executive, but in no event later than two (2) months following the commencement of the immediately following fiscal year.

(c)     For purposes of this Agreement, "**Disability**" shall mean the Executive's inability, due to physical or mental incapacity, to perform the essential functions of the Executive's job, with or without reasonable accommodation, for one hundred eighty (180) days out of any three hundred sixty-five (365) day period or one hundred twenty (120) consecutive days. Any question as to the existence of the Executive's Disability as to which the Executive and the Company cannot agree shall be determined in writing by a qualified independent physician mutually acceptable to the Executive and the Company. If the Executive and the Company cannot agree as to a qualified independent physician, each shall appoint such a physician and those two physicians shall select a third who shall make such determination in writing. The determination of Disability made in writing to the Company and the Executive shall be final and conclusive for all purposes of this Agreement.

(d)     Notwithstanding any other provision contained herein, all payments made in connection with the Executive's Disability shall be provided in a manner which is consistent with federal and state law.

5.4     Change in Control Termination.

(a)     Notwithstanding any other provision contained herein, if the Executive's employment hereunder is terminated by the Executive for Good Reason or by the Company without Cause (other than on account of the Executive's death or Disability), in each case within twelve (12) months following a Change in Control, the Executive shall be entitled to receive:

(i)     Any applicable Accrued Amounts; and

(ii)    Subject to the Executive's compliance with the post-termination obligations contained in Section 7 and the Employee Confidentiality and Proprietary Rights Agreement and the Executive's execution of a Release, to be effective according to its terms, a lump sum payment equal to six (6) months of the Executive's Base Salary, which shall be paid within fifteen (15) days following the Company's receipt of such Release.

(b)     For purposes of this Agreement, "**Change in Control**" shall mean the occurrence of any of the following after the Effective Date:

(i)     one person (or more than one person acting as a group), other than Compass Minerals, acquires direct ownership of the Company that, together with the ownership held by such person or group, constitutes more than 50% of the total voting power of the Company; provided that, a Change in

7

Control shall not occur if any person (or more than one person acting as a group) owns more than 50% of the total voting power of the Company and acquires additional equity; or

(ii)     the sale of all or substantially all of the Company's assets, other than to Compass Minerals.

5.5     Resignation of All Other Positions. On termination of the Executive's employment hereunder for any reason, the Executive shall be deemed to have resigned from all positions that the Executive holds as an officer, director, manager or member of any governing board (or a committee thereof) of the Company or any of its affiliates.

5.6     No Double-Counting. For clarity, upon the termination prior to the expiration of this Agreement for any reason, the Executive will be entitled to the compensation and benefits described in Section 5.1, 5.2, 5.3 or 5.4, but not two or more of any of such sections.

6.     Confidentiality and Proprietary Rights. On or prior to the Effective Date, the Company and the Executive shall enter into the Company's standard form of Employee Confidentiality and Proprietary Rights Agreement (the "**Employee Confidentiality and Proprietary Rights Agreement**").

7.     Non-Disparagement. The Executive agrees and covenants that the Executive will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the Company or its affiliates or its or their respective businesses, or any of its or their respective employees, officers, directors or shareholders. This Section 7 does not, in any way, restrict or impede the Executive from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. In the event of a breach or threatened breach by the Executive of Section 6 or Section 7 of this Agreement, the Executive hereby consents and agrees that the Company shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, and that money damages would not afford an adequate remedy, without the necessity of showing any actual damages, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief.

8.     Governing Law: Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of the State of California, without regard to conflicts of law principles.

9.     Entire Agreement; Acknowledgment.

9.1     Unless specifically provided herein, this Agreement and the Employee Confidentiality and Proprietary Rights Agreement contain all of the understandings and representations between the Executive and the Company pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations,

8

and warranties, both written and oral, with respect to such subject matter (including, without limitation, the Existing Agreement).

9.2     The Executive acknowledges and agrees that (i) the Transaction shall not constitute a Change in Control for purposes of the Existing Agreement or this Agreement and (ii) the Executive shall not be entitled to any payment or benefit pursuant to Section 5.1 or Section 5.2 of the Existing Agreement or this Agreement as a result of or in connection with the Transaction or the entering into of this Agreement.

10.    <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Executive and by the Company with the consent of the Reporting Person. No waiver by either of the parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the parties in exercising any right, power, or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

11.    <u>Severability</u>. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or by making such other modifications as it deems warranted to carry out the intent and agreement of the parties as embodied herein to the maximum extent permitted by law. The parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth herein.

12.    <u>Captions</u>. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

13.    <u>Section 409A</u>.

13.1    <u>General Compliance</u>. This Agreement is intended to comply with Section 409A of the Code or an exemption thereunder and shall be construed and administered in accordance with Section 409A. Notwithstanding any other provision of this Agreement, payments provided under this Agreement may only be made upon an event and in a manner that complies

9

with Section 409A or an applicable exemption. Any payments under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service or as a short-term deferral shall be excluded from Section 409A to the maximum extent possible. For purposes of Section 409A, each installment payment provided under this Agreement shall be treated as a separate payment. Any payments to be made under this Agreement upon a termination of employment shall only be made upon a "separation from service" under Section 409A. Notwithstanding the foregoing, the Company makes no representations that the payments and benefits provided under this Agreement comply with Section 409A, and in no event shall the Company be liable for all or any portion of any taxes, penalties, interest, or other expenses that may be incurred by the Executive on account of non-compliance with Section 409A.

13.2    Specified Employees. Notwithstanding any other provision of this Agreement, if any payment or benefit provided to the Executive in connection with the Executive's termination of employment is determined to constitute "nonqualified deferred compensation" within the meaning of Section 409A and the Executive is determined to be a "specified employee" as defined in Section 409A(a)(2)(b)(i), then such payment or benefit shall not be paid until the first payroll date following the six-month anniversary of the Termination Date or, if earlier, on the Executive's death (the "**Specified Employee Payment Date**"). The aggregate of any payments that would otherwise have been paid before the Specified Employee Payment Date shall be paid to the Executive in a lump sum on the Specified Employee Payment Date and thereafter, any remaining payments shall be paid without delay in accordance with their original schedule.

13.3    Reimbursements. To the extent required by Section 409A, each reimbursement or in-kind benefit provided under this Agreement shall be provided in accordance with the following: (i) the amount of expenses eligible for reimbursement, or in-kind benefits provided, during each calendar year cannot affect the expenses eligible for reimbursement, or in-kind benefits to be provided, in any other calendar year; (ii) any reimbursement of an eligible expense shall be paid to the Executive on or before the last day of the calendar year following the calendar year in which the expense was incurred; and (iii) any right to reimbursements or in-kind benefits under this Agreement shall not be subject to liquidation or exchange for another benefit.

13.4    Tax Gross-ups. Any tax gross-up payments provided under this Agreement shall be paid to the Executive on or before December 31 of the calendar year immediately following the calendar year in which the Executive remits the related taxes.

14.    Successors and Assigns. This Agreement is personal to the Executive and shall not be assigned by the Executive. Any purported assignment by the Executive shall be null and void from the initial date of the purported assignment. The Company may assign this Agreement to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Company. This Agreement shall inure to the benefit of the Company and permitted successors and assigns.

15.    Notice. Notices and all other communications provided for in this Agreement shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt

10

requested, or by overnight carrier to the parties at the addresses set forth below (or such other addresses as specified by the parties by like notice):

      If to the Company:

      Fortress North America, LLC
      c/o Compass Minerals America, Inc.
      9000 W. 109th St., Suite 100
      Overland Park, KS 66210
      E-mail: legal@compassminerals.com
      Attention: Compass Minerals Legal Dept

      If to the Executive:

      Robert Burnham
      3264 True Grit Way
      Stevensville, MT 59870-6758

16.    Representations of the Executive. The Executive represents and warrants to the Company that:

      (a)    The Executive's acceptance of employment with the Company and the performance of duties hereunder will not conflict with or result in a violation of, a breach of, or a default under any contract, agreement, or understanding to which the Executive is a party or is otherwise bound.

      (b)    The Executive's acceptance of employment with the Company and the performance of duties hereunder will not violate any non-solicitation, non-competition, or other similar covenant or agreement of a prior employer.

17.    Withholding. The Company shall have the right to withhold from any amount payable hereunder any Federal, state, and local taxes in order for the Company to satisfy any withholding tax obligation it may have under any applicable law or regulation.

18.    Survival. Upon the expiration or other termination of this Agreement, the respective rights and obligations of the parties hereto shall survive such expiration or other termination to the extent necessary to carry out the intentions of the parties under this Agreement.

19.    Counterparts. This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

20.    Acknowledgement of Full Understanding. THE EXECUTIVE ACKNOWLEDGES AND AGREES THAT THE EXECUTIVE HAS FULLY READ, UNDERSTANDS AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE EXECUTIVE ACKNOWLEDGES AND AGREES THAT THE EXECUTIVE HAS HAD AN OPPORTUNITY

11

TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THE EXECUTIVE'S CHOICE BEFORE SIGNING THIS AGREEMENT.

*(Signature Page Follows)*

12

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**FORTRESS NORTH AMERICA, LLC,**
a Delaware limited liability company

By: _____
Name: Lorin Crenshaw
Title: Director

[*Signature Page to Employment Agreement – Robert Burnham*]

**EXECUTIVE:**

*Robert Burnham*
ROBERT BURNHAM

*[Signature Page to Employment Agreement - Robert Burnham]*

# Exhibit B



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                GAVIN NEWSOM, GOVERNOR

Civil Rights Department                                                             KEVIN KISH, DIRECTOR
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 27, 2024


Meghan Baker
621 Capital Mall, 18th Floor
Sacramento, CA 95814

RE:   **Notice to Complainant's Attorney**
      CRD Matter Number: 202408-25972527
      Right to Sue: Burnham / Fortress North America LLC et al.

Dear Meghan Baker:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

August 27, 2024

RE:   **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202408-25972527
Right to Sue: Burnham / Fortress North America LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

August 27, 2024

Robert Burnham
PO Box 671
Stevensville, MT 59870

RE:   **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202408-25972527
Right to Sue: Burnham / Fortress North America LLC et al.

Dear Robert Burnham:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective August 27, 2024 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Robert Burnham                                             CRD No. 202408-25972527

                              Complainant,

vs.

Fortress North America LLC
4220 Duluth Avenue
Rocklin, CA 95765

Compass Minerals International Inc.
9900 W. 109th Street, Suite 100
Overland Park, KS 66210

                              Respondents

---

**1.** Respondent **Fortress North America LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant is naming **Compass Minerals International Inc.** business as Co-Respondent(s).

**3.** Complainant **Robert Burnham**, resides in the City of **Stevensville,** State of **MT.**

**4.** Complainant alleges that on or about **August 30, 2023**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, denied accommodation for a disability.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation and as a result was terminated.

-1-
*Complaint – CRD No. 202408-25972527*

Date Filed: August 27, 2024

CRD-ENF 80 RS (Revised 2024/05)

1

**Additional Complaint Details:** Burnham was previously employed by Respondent Fortress
North America, LLC ("Fortress"), an entirely owned subsidiary of Respondent Compass
2   Minerals International Inc. ("Compass") before he was wrongfully terminated on August 30,
2023. While Burnham was diligently working as Fortress' CEO to ensure the company's
3   continued success in and around the summer of 2023, he was also taking care of his wife
during her ongoing cancer treatments.  At the same time, Burnham was receiving medical
4   treatment for his own serious heart condition, which required him eventually to undergo
cardiac surgery in October 2023.  Throughout 2023, both Compass and Fortress
5   (collectively, "Respondents") knew that Burnham was his wife's devoted caretaker during
and in between her cancer treatments.  They also knew he was suffering from his own
6   serious medical condition and required heart surgery and an accompanying leave of
absence to undergo and recover from this major operation.
7   Burnham's serious heart condition limited major life activities, and it required cardiac surgery
and an accompanying leave of absence to undergo and recover from this serious medical
8   procedure. Respondents knew about Burnham's heart condition, its limitation on major life
activities, and that this condition necessitated surgery and a leave of absence.  Burnham
9   had been successfully performing the essential duties of his job as Fortress' CEO and if he
had been afforded leave to undergo and recover from heart surgery as a reasonable
10  accommodation, he would have been able to resume his job duties after recovery from the
surgery.  Respondents failed to provide Burnham the reasonable accommodation of leave
11  or modified job duties relating to his heart condition and accompanying surgery.  Burnham
repeatedly informed Respondents about his serious medical condition, which again, they
12  expressly knew required heart surgery in October 2023 and a leave of absence to recover
from this surgery.  However, before Burnham's planned surgery, Respondents discharged
13  Burnham as Fortress' CEO.  Respondents terminated Burnham on August 30, 2023, while
Burnham was at the hospital with his wife while she underwent cancer treatment.  Burnham
14  is informed and believes Respondents' conduct constitutes both discriminatory and
retaliatory conduct prohibited by the Fair Employment and Housing Act.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | VERIFICATION

2 | I, **Meghan M. Baker**, am the **Attorney** in the above-entitled complaint. I have read
3 | the foregoing complaint and know the contents thereof. The matters alleged are
based on information and belief, which I believe to be true.

4 |
On August 27, 2024, I declare under penalty of perjury under the laws of the State of
5 | California that the foregoing is true and correct.

6 | **Sacramento, CA**

-3-
*Complaint – CRD No. 202408-25972527*

Date Filed: August 27, 2024

CRD-ENF 80 RS (Revised 2024/05)

# Exhibit C

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
DOWNEY BRAND LLP
MEGHAN M. BAKER (SBN 243765) | ALEXANDRA K. LAFOUNTAIN (SBN 301003)
621 Capitol Mall, 18th Floor, Sacramento, CA  95814
TELEPHONE NO.: 916.444.1000      FAX NO.: 916.444.2100
EMAIL ADDRESS:
ATTORNEY FOR *(Name)*: Plaintiffs Robert Burnham and Sierra Nevada Consulting Inc.

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
08/29/2024 at 03:50:18 PM
By: Cindy P Baldock
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF PLACER
STREET ADDRESS: 10820 Justice Center Drive
MAILING ADDRESS: P.O. Box 619072, Roseville 95661-9072
CITY AND ZIP CODE: Roseville 95678
BRANCH NAME: Hon. Howard G. Gibson Courthouse

CASE NAME: Robert Burnham, et al. vs. Fortress North America, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited  ☐ Limited<br>(Amount demanded exceeds $35,000)  (Amount demanded is $35,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | S-CV-0053505<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify)*: 10
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 29, 2024

MEGHAN M. BAKER
_____
(TYPE OR PRINT NAME)                    ▶    *(signature)*    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

# Exhibit D



CASE NO. S-CV-0053505

## A CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED:

DATE: February 3, 2025

TIME:
- [ ] **1:00 P.M. If your case number starts with "T-CV"**
- [✔] **2:00 P.M. If your case number starts with "S-CV"**
- [ ] **3:00 P.M. If your case number starts with "S-CV" and is deemed Complex**
- [ ] **3:00 P.M. If your case number starts with "M-CV"**

DEPT:
- [✔] **40 - 10820 Justice Center Drive, Roseville, California 95678**
- [ ] **14 - 2501 North Lake Blvd., Tahoe City, California 96145**
- [ ] **1 - 101 Maple St. Auburn, California 95603**

## IF YOU DO NOT HAVE AN ATTORNEY, READ THIS:

The judge does **not** decide whether you win or lose your case at this court date. If you do not file an "Answer," or other "responsive pleading," you may automatically lose this case, usually before this court date. The Answer or responsive pleading must be filed with the court clerk within 30 days of the day you received the Summons, along with a filing fee or application for waiver of court fees or the Plaintiff may seek a default judgment.

The Self-Help Center may provide you with procedural information. To schedule an appointment with the Self-Help Center or for more information, go to the court's website at www.placer.courts.ca.gov and select "Self-Help Center."

## INFORMATION ABOUT CASE MANAGEMENT CONFERENCES:

15 calendar days before the Case Management Conference, you must file and serve a completed Case Management Statement (CM-110).

You do not need to come to court for the first Case Management Conference. You can see the court's proposed orders 12 calendar days before the Case Management Conference on the court's website, www.placer.courts.ca.gov. Select "Tentative Rulings and Calendar Notes," and scroll down to "Civil Case Management Conference Notes." If you do not have internet access, call the court at 916-408-6000 to get the information.

**The court does not provide a court reporter** at Case Management Conferences or Law & Motion hearings. If you want the proceedings reported, you must provide your own court reporter at your own expense. See Local Rule of Court 10.15 for more information.

If you want to appear remotely, you must schedule your remote appearance through the court's website, www.placer.courts.ca.gov. For more information on the remote appearance system, please visit "Remote Civil Hearings" on the website and see Local Rule of Court 10.24. You must pay online to use this service unless you have been granted a fee waiver.

Exhibit E

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# IN AND FOR THE COUNTY OF PLACER

# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Superior Court of California, County of Placer (Placer County Superior Court), strongly encourages parties in civil cases to explore and pursue the use of Alternative Dispute Resolution. This packet is provided in compliance with California Rules of Court, Rule 3.221.

**What is Alternative Dispute Resolution?**
Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include:

- Arbitration  • Mediation  • Settlement Conferences  • Private judging
- Neutral evaluation  • Mini-trials  • Negotiation and *hybrids* of these processes

All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes. At the present time, the Placer County Superior Court offers Mediation and Arbitration.

**What are the advantages of using ADR?**
ADR can have a number of advantages over traditional court litigation.

❖ **ADR can save time.** Even in a complex case, a dispute can often be resolved through ADR in a matter of months or weeks, while a lawsuit can often take years.

❖ **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses.)

❖ **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses primarily on the parties' legal rights and responsibilities.

❖ **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situations and that will best serve their particular needs.

❖ **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

Litigants are encouraged to use an ADR process as early in the case as circumstances permit.

Form Adopted for Mandatory Use
Superior Court of California, County of Placer
Revised 2-1-2012
Page 1 of 2                                                                                   www.placer.courts.ca.gov

**Arbitration and Mediation**
Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California state courts are Arbitration and Mediation.

***Arbitration***
An Arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an Arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitration can be binding if the parties so agree in writing. If there is no such agreement, either party can reject the Arbitration award and request a trial.

The plaintiff may elect, the parties may stipulate, or the judge may Order the case to Arbitration. If a judge orders a case to arbitration, the court will send a Notice of Appointment and an appropriate Order to Arbitration to all parties. Arbitrations are conducted pursuant to California Rules of Court, rules 3.810 through 3.830, and Local Rules, Chapter 20.1.9. Unless otherwise stipulated, an Award of Arbitrator is not binding upon the parties provided they file a timely Request for Trial De Novo pursuant to California Rules of Court, rule 3.826. Upon the filing of a timely Request for Trial De Novo, the case will proceed to a Trial-Setting Conference. If no timely Request for Trial De Novo is filed, judgment based upon the Award of Arbitrator will be entered pursuant to California Rules of Court, rule 3.827.

***Mediation***
Mediation is a voluntary, informal, confidential process in which the Mediator, a neutral third party, facilitates settlement negotiations. The Mediator improves communication by and among the parties, helps the parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

Parties to a civil action may agree to privately mediate their dispute with a Mediator of their choice without court assistance. The cost of Mediation must be borne by the parties equally unless the parties agree otherwise. Parties will be charged an amount set by the Mediator.

**Notice Requirements**
Upon filing a complaint or cross-complaint, the plaintiff/cross-complainant must acquire this ADR Information Sheet from the Court Website, http://www.placer.courts.ca.gov/, or the Superior Court Clerk. **Plaintiff is required to include the ADR Information Sheet when he or she serves the Complaint on the Defendant.**

**Parties must indicate the types of ADR process(es) the parties are willing to or have participated in on the *Case Management Statement* (Form CM-110) prior to the Case Management Conference.**

**Additional Information**
For more information on the specific ADR programs of the Placer Superior Court, please review the Local Rules of the Placer County Superior Court, available at all court locations and on-line at www.placer.courts.ca.gov.

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET

Form Adopted for Mandatory Use
Superior Court of California, County of Placer
Revised 2-1-2012
Page 2 of 2

www.placer.courts.ca.gov